**1-17IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MICHAEL K. LANHAM,**

   **Petitioner,**

**v.**                                        **Case No. 1:17cv20**
                                             **(Judge Keeley)**

**JOHN T. MURPHY, Warden,**

   **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On February 10, 2017, the *pro se* Petitioner, Michael K. Lanham, filed this

petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF No. 1. The sole

ground raised was that the photographic array used to identify him was impermissibly

suggestive. On February 27, 2017, the Petitioner was granted leave to proceed *in forma*

*pauperis* [ECF No. 9], and Magistrate Judge Michael J. Aloi made a preliminary review

of the petition and found that summary dismissal was not warranted.  Accordingly, the

Respondent was directed to show cause why the petition should not be granted. ECF

No. 10.  On March 24, 2017, the Petitioner filed a Motion for Leave to File Amendments

to Petition.  ECF No. 12. On March 27, 2017, the Respondent filed his Response to the

original Petition [ECF No. 13], together with a Motion for Summary Judgment with

supporting Memorandum. ECF Nos. 14, 15. On March 28, 2017, Magistrate Judge Aloi

granted the Petitioner's previously filed Motion and afforded the Respondent 14 days to

file any supplemental response he deemed necessary. ECF No. 16. No supplemental

1

response was filed, and on May 12017, a <u>Roseboro</u>[1] Notice was issued. ECF No. 21. On June 14, 2017, the Petitioner filed his Response/Answer to the Respondent's Motion for Summary Judgment. ECF No. 32.

On June 14, 2017, the Petitioner filed  "Petitioner's Amended Habeas Corpus," which was construed as a Motion to Amend. ECF No. 33. On June 21, 2017, the Motion was granted, and the Petitioner was directed to refile his amended document on the court-approved form. ECF No. 36. The Petitioner was specifically warned that the amended petition would supersede his original petition and only those grounds raised in the amended petition would be considered.[2] <u>Id.</u> at 3.   On July 13, 2017, Petitioner filed his Amended Petition on the court-approved form. ECF No. 43. The Petitioner reasserted his claim that the photographic lineup used to identify him during the police investigation was unconstitutional and impermissibly suggestive. He also alleged that there was insufficient evidence to support his conviction, and he was denied his Sixth Amendment right to confront the witnesses against him. On August 23, 2017, the Respondent filed a Motion to Dismiss the Amended Petition because it included an

---

[1] <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975)
[2] The undersigned notes in the construed Motion, the Petitioner alleged newly discovered evidence which would have an impact on the constitutionality of his conviction. Specifically, the Petitioner alleged that he had become aware that Ms. Hollington had been arrested and convicted of the crime of embezzlement after his trial. In addition, he alleged that she was fired from her employment at the Dry Cleaners. He maintained that "this brings into question her suitability as an  alternate suspect for the crime for which he was convicted and a motive for her to file a false police report." ECF No. 33 at 2. The Petitioner indicated that he brought this to the attention of his post conviction counsel, but counsel failed to bring the information to the attention of the court over his objection. He also alleged that he was unable to perform an investigation into this matter on his own from prison and appeared to request that this Court appoint him counsel. The Petitioner then noted that he was entitled to relief under Rule 60. None of these allegations, requests or assertions were included in the Amended Petition that he filed on the court approved form. Furthermore, to the extent the Petitioner was suggesting that this Court would have jurisdiction to entertain a Rule 60 motion regarding a judgment entered by the State court, he is incorrect,

unexhausted claim[3] and constituted a mixed petition. ECF No. 49. A second Roseboro

Notice was issued on August 24, 2017. ECF No. 50. On September 4, 2017, Petitioner

filed a Motion for Leave to File Amendments, which upon further review is actually a

request to abandon the claim raised in his Amended Petition which is not exhausted.

ECF No. 56. In addition, Petitioner attached 20 pages of what amounts to argument in

support of the two exhausted claims. ECF No. 56-1.  On September 15, 2017, this

matter was transferred from Magistrate Judge Aloi to the undersigned pursuant to an

Order entered by Gina M. Groh, Chief Judge. On October 5, 2017, Petitioner filed a

Response in Opposition to the Respondent's Motion to Dismiss. In it, Petitioner eluded

to his September 4, 2017, Motion for Leave to File Amendments, and indicated that he

again wished to drop the unexhausted claim in his Amended Petition. ECF No. 58. On

November 21, 2017, an Order was entered directing Petitioner to indicate whether he

wished to seek a stay and return to state court to exhaust his state remedies regarding

his Sixth Amendment claim. In the event Petitioner indicated he did not wish to seek a

stay,  the Respondent was afforded 21 days to file a supplemental answer to address

the Petitioner's claim that insufficient evidence exists upon which to base his conviction.

ECF No. 60. On December 8, 2017, the Petitioner filed a Motion to Submit New

Evidence in which he unequivocally stated that he did not wish to seek a stay. ECF No.

62.  In addition, Petitioner attached the Bridgeport Police Department Statement form

from the victim. ECF No. 62-1. On December 12, 2017, the Respondent filed a second

Motion for Summary Judgment and supporting memorandum. ECF Nos. 64, 65. Yet

---

[3]Specifically, the Respondent alleged that the third ground, Petitioner's Sixth Amendment claim, had never been presented to any state court.

another Roseboro Notice was issued on December 13, 2017. On January 4, 2018, the Petitioner filed his response. The matter is now ripe for this Court's review.

## II. Background

### A.  Petitioner's State Criminal Proceedings

During the May 2011, term of the Harrison County Grand Jury, the Petitioner was indicted for one count of first-degree robbery and one count of conspiracy to commit robbery. ECF No. 13-1. The robbery in question took place at Dry Cleaning World on February 18, 2011. Pamela Hollington was the sole employee in the store at the time. A male and female entered the dry cleaners and subsequently stole $230 from the cash register. During the course of the investigation, the female was identified as Debbie Nunley, a former employee who had recently quit. The male was identified as the Petitioner, Ms. Nunley's boyfriend, who would frequently hang around the dry cleaners while she worked. On February 23, 2011, the investigating officer took a photo array to Dry Cleaning World to show the victim, who identified the Petitioner and Debbie Nunley as the two individuals who had committed the robbery. Prior to trial, the Petitioner moved to suppress the photographic identification made by the victim, Pamela Hollington, and requested a hearing to determine whether the identification was either reliable or impermissibly suggestive. ECF No. 13-2.

A pretrial hearing was conducted on October 20, 2011 [ECF No. 13-22], during which the circuit court addressed the Petitioner's motion regarding the photo array. The investigating officer, Detective Wilfong, testified regarding the photographic array. Id. 6-20.He stated that he compiled the array using mugshots and DMV photographs, which were pasted into Microsoft Word. Id. 7-8.  He acknowledged that the photographs were

4

in color, but that he had to print them in black-and-white due to his lack of a color printer. Id. at 8.  He also acknowledged that the program used to transfer the photographs will sometimes stretch them to fit the box provided but that it did not otherwise alter the photograph. Id. He noted that the individuals pictured in the photograph shared similar features. Id. at 10-11. Detective Wilfong further testified that he did not purposefully place the Petitioner's and Ms. Nunley's photographs third in the sequence of their respective photographic arrays. Id. at 12.  He specified that both arrays were compiled at the same time. In addition, he indicated that the sequence of the arrays "just happened to fall on that [third] number." Id.

Before he presented the photographic arrays to Ms. Hollington, he read to her the following disclaimer:

> You will be asked to look at a group of photographs. The fact that the photographs are shown to you should not influence your judgment. You should not conclude or guess that the photographs contain a picture of the person who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties. Please do not discuss the case with other witnesses nor indicate in any way that you have identified someone.

Id. at 14.  Ms. Hollington acknowledged that she understood.  Id. After she independently read and signed the form, Detective Wilfong presented her with the photographs. Id. at 13. He testified that he did nothing to suggest any particular photograph and remained silent during Ms. Hollington's review of the array. Id. He testified that Ms. Hollington affirmatively identified the Petitioner as her assailant. Id. Furthermore, Ms. Hollington identified the Petitioner almost immediately, and exhibited "no hesitation." Id. at 5.

For purposes of the discussion that will follow, it is important to note that Detective Wilfong testified that he included individuals in the photographic array in the same age range, with similar hairstyle, hair color, and facial features. ECF No. 13-22 at 16-17. He further stated that hair and eye color were ultimately rendered irrelevant due to his use of a black-and-white printer to print the array. Id. The Petitioner and Ms. Nunley were included in their respective arrays based upon Detective Wilfong's own suspicion, which was based upon his familiarity with both suspects from his patronage of Dry Cleaning World. Id. at 19.

At the conclusion of Detective Wilfong's testimony, counsel for the Petitioner moved for the photo identification suppression based upon how it was compiled. ECF No. at 13-22 at 21. More specifically, counsel argued that the identification should be suppressed because of the Petitioner's and Ms. Nunley's inclusion as the third suspect on their respective photographic arrays. Id. at 21. Counsel argued that such a practice was impermissibly suggestive. Id. Counsel also argued that some of the photographs were "a little dark," leaving only four photographs that you can actually really see very well. Moreover, counsel noted that Detective Wilfong testified that he could not be sure if the photographs were stretched or, for lack of a better word, morphed in some way when he cut and pasted them into the lineup. Therefore counsel argued that the array was not accurate, was suggestive and should be suppressed. Id. at 22. The State, based upon Detective Wilfong's adherence to W. Va. Code § 62-1E-1, et seq., and Ms. Hollington's immediate identification of the Petitioner, requested that the motion to suppress be denied. ECF No. 13-22 at 22-23. The Circuit Court agreed and denied

Petitioner's motion, adding that the individuals pictured in the array all shared similar features. Id. at 23-24.

The Petitioner's trial took place on October 25 and 26, 2011. Ms. Hollington appeared and testified that she had time to observe both the Petitioner and Ms. Nunley while they were in Dry Cleaning World. After describing the sequence of events from the time of their arrival to their departure with the money, Ms. Hollington identified both the Petitioner and Ms. Nunley in court. Id. at 144.

On October 26, 2011, the jury found the Petitioner guilty of both counts of the indictment.  ECF No. 13-5 at 5.  On December 8, 2011, the circuit court sentenced the Petitioner to an aggregate term of 31 to 35 years' incarceration. ECF No. 13-6.

**B.  Petitioner's Direct Appeal**

The Petitioner filed a timely notice of appeal on January 11, 2012. The Petitioner presented the following assignments of error:

1.      The trial court erred in permitting the State to introduce the photographic array and subsequent identification as evidence at trial.

2.      The evidence presented at trial did not support the jury's finding of a guilty verdict beyond a reasonable doubt.

3.      The trial court erred in denying the Petitioner's post trial motion for judgment of acquittal.

ECF No. 13-8 at 9.

The Supreme Court of Appeals of West Virginia ("WVSCA") filed a Memorandum Decision denying the Petitioner relief on February 11, 2013. In particular, the Court found that the circuit court did not err in admitting into evidence the photographic array

or the subsequent identification of the Petitioner. The Court noted the record showed that the victim's identification of the Petitioner was conducted in accordance with W. Va. Code § 62-1E- 2 and that the array itself was not tainted. In addition, the Court found that the jury was presented with sufficient evidence upon which the jury could have returned a guilty verdict, the Petitioner's credibility arguments notwithstanding. ECF No. 13-11 at 3.

C. **Petitioner's State Habeas Proceeding**

The Petitioner filed a *pro se* petition for habeas corpus on February 6, 2014. ECF No. 13-27. He raised four grounds for relief. First, he alleged various instances of ineffective assistance of counsel, including: (1) failure to have a mental evaluation completed and ensuring that he was on proper meds; (2) failure to retrieve defendant's timesheet from work for rebuttal; (3) failure to press the fact that the state's key witness, Pam Hollington, was impeached due to perjury; (4) failure to consult with defendant on many issues; (5) failure to present any professional witnesses. Second, he alleged that Detective Wilfong tampered with defense witnesses, including his mother. Third, he alleged prosecutorial misconduct based upon improper comments about his mother and himself during closing statements to the jury. Finally, the Petitioner alleged that his counsel was under the influence of medication during trial and at times was shaky and inaudible. ECF No.  13-13 at 5-6. The circuit court subsequently appointed the Petitioner counsel, and on August 5, 2014, ordered him to file an amended petition for habeas corpus relief. ECF No. 13-14.

On October 14, 2014, counsel filed a supplemental petition arguing: (1) mental competency at the time of trial; (2) the suppression of helpful evidence; (3) the State's

knowing use of perjured testimony; (4) ineffective assistance of counsel; (5) challenges

to the composition of the grand jury; (6) constitutional errors and evidentiary rulings; (7)

inadequate jury instructions; (8) prejudicial statements by the prosecutor; (9) insufficient

evidence; (10) a more severe sentence than expected; and (11) an excessive sentence.

ECF No. 13-15. The State answered the supplemental petition on December 1, 2014.

ECF No. 13-6, 13-27.

By order entered May 11, 2016, and amended order entered May 24, 2016, the

circuit court denied the Petitioner habeas relief. ECF No. 13-27. In the court's 28 page

order, it found the entirety of the Petitioner's claim to be without merit, including his

challenge to the photographic identification re-raised as a constitutional challenge to the

court's admission of such evidence at trial. Id. at 19-20.

D.  **Petitioner's State Habeas Appeal**

The Petitioner filed a timely notice of appeal of the circuit court's denial of habeas

relief on May 31, 2016. ECF No. 13-18. However, based upon the Petitioner's inability

to raise any colorable claims that were not barred by res judicata, his counsel moved to

dismiss the appeal on January 12, 2017. ECF No. 13-19. The WVSCA dismissed the

matter on March 2, 2017.[4]

### III. The Pleadings

A.  **Petitioner's Amended Petition**

---

[4] When moving for the dismissal of the appeal, appellate counsel failed to include a form
bearing the consent of the Petitioner to do so. See ECF No. 13-20. The WVSCA, therefore,
noticed the matter's dismissal, providing an additional 10 day period in which to perfect the
appeal. Id. When the Petitioner failed to either perfect the appeal or challenge the dismissal
motion, the court ultimately dismissed the matter on March 2, 2017. ECF No. 13-21. In his
original § 2254, the Petitioner states the appeal was withdrawn based upon the advice of
counsel. ECF No. 1 at 5. Regardless, because the appeal was withdrawn, and the WVSCA did
not issue a decision, any claims raised therein which were not raised on direct appeal are not
exhausted.

In his amended petition, the Petitioner raises two grounds for relief. First, he alleges, as he has throughout the course of his state and federal proceedings, that the police used an unconstitutionally suggestive photographic array. Second, he alleges that the actual evidence does not support the conviction. More specifically, the Petitioner alleges that there was no evidence to tie him to the crime or the crime scene other that the tainted photo lineup. He notes that there was no DNA, no fingerprints or other physical evidence found, and neither the money bag nor the clothing worn by the suspects was found.

## B. <u>Respondent's Motion for Summary Judgment</u>

The Respondent first contends that the Petitioner's claim that the police implemented an unconstitutionally suggestive photographic array is without merit. In particular, the Respondent argues that the WVSCA's review of this claim is neither an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts. The Respondent notes that the photographic array implemented by the police to identify the Petitioner was proper and lawful under the independent and adequate state law basis of W.Va. Code § 62-1E-2(a), *et seq.*, which mirrors many of the requirements set forth by the United States Supreme Court in <u>Neil v. Biggers</u>, 409 U.S. 188 (1972), and <u>Mansion v. Brathwaite</u>, 432 U.S. 98 (1977).

In addition, the Respondent argues that during the trial, the State provided both eyewitness testimony identifying the Petitioner as one of the assailants and other circumstantial evidence of the Petitioner's guilt from which the jury could justifiably find him guilty beyond a reasonable doubt. The Respondent maintains, therefore, that the WVSCA's denial of the Petitioner's sufficiency claim was not objectively unreasonable.

**C. Petitioner's Response to the State's Motion for Summary Judgment**

The Petitioner attacks Ms. Hollington's trial testimony and alleges that she was sufficiently impeached to show that she lied about the robbery all together. In addition, the Petitioner alleges the  photo array was impermissibly suggestive and did not fit the description of either himself or Ms. Nunley. The Petitioner argues at length about the changes to W.Va. Code § 62-1-E-2, which  took effect in 2013, and appears to suggest that those changes render the photo array compiled in 2011 unconstitutional. The Petitioner also appears to allege that Detective Wilfong has a personal motive for have the Petitioner and Ms. Nunley  convicted.[5] As well, the Petitioner alleges that Ms. Hollington had open warrants in another state for passing bad checks that provided a perfect  reason for her to gain favor with Detective Wilford by altering her description of the Petitioner and Ms. Nunley.

**IV. Standard of Review**

Title 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death Penalty act of 1996 ("AEDPA"), authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standards set forth in § 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was

---

[5]Although the Petitioner does not elaborate, in a prior pleading, which is not technically part of the record, the Petitioner alleged that Detective Wolong had prior contact with him and his codefendant when he responded to a reported domestic dispute involving them, and Detective Wilfong asked Ms. Nunley out on a date when she worked at Dry Cleaning World and was rejected by her. Amended Habeas Corpus Petition, ECF No. 33 at 2. This "Amended Habeas Corpus Petition" was construed as a Motion to Amended, and the Petitioner's subsequent Amended Petition [ECF No. 43] did not contain these assertions.

adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

> (1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). Moreover, the factual determinations by the state courts are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Therefore, when reviewing a petition for habeas relief, the Federal Court uses a "highly deferential lens." DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application clauses of § 2254)(1)(d) have separate and independent meanings. Williams v. Taylor, 529 U.S. 362 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 US at 405) (internal quotations omitted). A habeas writ may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme]

Court's cases but unreasonably applies it to the facts of the particular case." Id. at 300-01 (internal marks omitted).

Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under the standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, the application must also be unreasonable." Williams, 529 US at 365.

In the instant case, the Respondent has moved for summary judgment. Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." Brandt v. Gooding, 636 Fed 3d 124, 132 (4th Cir. 2011) (quoting Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991)). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller & Mary K Kane, Federal Practice and Procedure: Civil §  2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). In addition only genuine disputes over material facts "will properly preclude the entry of summary judgment." Anderson, 477 US at 248; JFK Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." Cox v. Cnty of Prince William, 249 Fed. 3d 295, 299 (4th Cir. 2001) (citing Anderson, 477 US at 248).

Motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. See Miller v. F.D.I.C., 906 F.2d 972, 974 (4th Cir. 1990). Nevertheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. Anderson, 477 US at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587- 88 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Anderson, 477 U.S. at 249-50).  With these standards in mind, the undersigned considers the two grounds raised by the Petitioner.

## V. Analysis

## A. Photo Array

14

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States., 390 U.S. 377, 384 (1968); see also Harker v. Maryland, 800 F.2d 437, 443 (4th Cir. 1986) (holding that evidence of eyewitness identification should only be excluded from the jury's consideration if the evidence is "manifestly suspect."). The Fourth Circuit follows the United States Supreme Court's two-step analysis, set forth in Manson v. Brathwaite, 442 U.S. 98, 110-114 (1977) to determine whether  eyewitness identification testimony is admissible: first, a defendant must show that the photographic lineup procedure was impermissibly suggestive. Second, even if the procedure was suggestive, an in-court identification is still valid if it was reliable. Factors used to asses reliability include: 1) a witness' opportunity to view the perpetrator at the time of the crime; 2) a witness' degree of attention at the time of the offense; 3) the accuracy of the witness' prior description of the perpetrator; 4) the witness' degree of certainty when identifying the defendant as the perpetrator at the time of the encounter; and 5) the length of time between the crime and the confrontation. See U.S. v. Wilkerson, 84 F.3d 692 (4thCir. 1996).

A determination of the constitutionality of pretrial identification procedures is ultimately "a mixed question of law and fact that is not governed by [28 U.S.C. § 2254(d).]" Sumner v. Mata, 455 U.S. 591, 597 (1982). "In deciding this question, the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard." Id. see also 28 U.S.C. § 2254(e)(1). However, 28 U.S.C.§ 2254(e)(1) "requires the federal courts to show a high

measure of deference to the factfindings made by state courts." <u>Sumner</u> 455 U.S. at 598.

In the instant action, the Petitioner attacks the photo array procedure as suggestive because of the sequencing of the photographs. More specifically, he alleges they were suggestive because both his and his co-defendant, Ms. Nunley's, photographs appear in the third position.[6] However, the Petitioner fails to recognize that such sequencing could not have had an effect on Ms. Hollington's identification of him, because the male photographic array was displayed to her before the female photographic display.

In addition, the Petitioner alleges that his picture displayed such clarity that it prompted Ms. Hollington to identify him as the male assailant. However, he offers no proof of that allegation.

Finally, he alleges that the photo array did not comply with the requirements of W.Va. Code § 62-1E-2. However, the Petitioner sets forth the requirements of that section of the Code which became effective July 12, 2013, more than two years after the photo array in question was shown to Ms. Hollington.

As previously outlined, a hearing was conducted by the trial judge on the Petitioner's motion to suppress the photo identification and issued a decision denying that motion. Furthermore, in its Memorandum Decision denying the Petitioner's appeal, the WVSCA noted that the record showed that the victim's identification of the Petitioner was conducted in accordance with W. Va. Code. § 62-1E-2[7], and that the array itself

---

[6] The photo array for the male and female suspect is comprised of six photos. Three are in line in one row, with the other three in line in a second row just below the first. The Petitioner and Ms. Nunley are both pictured third in the first row, above the numeral 3. ECF No. 1-1 at 1-2.

[7] As it existed at the time, W. Va. Code § 62-1E-2 required only that:

was not tainted. Because the Petitioner has failed to adequately rebut the findings of either the trial court or the WVSCA, or to establish that the state courts unreasonably applied federal law, or improperly weighed the applicable facts in violation of 28 U.S.C. § 2254, this ground for relief fails.

### D. Sufficiency of the Evidence

As his alternative ground for relief, the Petitioner argues that the actual evidence does not support his conviction. More specifically, the Petitioner alleges that there was no evidence to tie him to the crime or the crime scene other that the "tainted photo lineup." The Petitioner contends because there was no DNA, fingerprints or other physical evidence tying him to the crime, and neither the money bag or clothing worn by the suspects was ever found, his conviction should be set aside.

When called upon to review a state court conviction for constitutional infirmity, a federal habeas court has a duty to assess the factual record in order to determine whether the evidence could reasonably support a finding of guilt beyond a reasonable

---

(q) Before a lineup, the eyewitnesses should be given the following three instructions:
(1) That the perpetrator might or might not be present in the lineup;
(2) That the eyewitness is not required to make an identification; and
(3) That it is as important to exclude innocent persons as it is to identify the perpetrator;
(b) Law-enforcement offices should make a written record of a lineup, including the following information:
(1) The date, time and location of the lineup.
(2) The names of every person in the lineup, if known, and all other persons present at the lineup,
(3) The words used by the eyewitness in any identification, including words that describe the eyewitness' certainty or uncertainty in the identification at the time the identification is made.
(4) Whether it was a photo lineup or a live lineup.
(5) The number of photos or individuals that were presented in the lineup.
(6) Whether the lineup administrator knew which person in the lineup was the suspect.
(7) Whether, before the lineup, the eyewitness was instructed that the perpetrator might or might not be presented in the lineup.
(8) Whether the lineup was simultaneous or sequential.
(9) The signature, or initials, of the eyewitness, or notation if the eyewitness declines or is unable to sign.
(10) A video of the lineup and the eyewitness' response may be included.

doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, "does not require a court to ask itself whether **it** believes the evidence at the trial established guilt beyond a reasonable doubt." Id. at 318-19 (internal quotation omitted) (emphasis in original). Rather, the crucial question is whether, "viewing the evidence in the light most favorable to the prosecution **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Fundamentally, "Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). Not only must a state court defer to the conclusions and inferences of the jury on direct review, but on federal collateral review, a "federal [habeas] court … may [overturn a state court decision] only if the state court decision was 'objectively unreasonable'" pursuant to 28 U.S.C. § 2254. Id.. Based on this standard, the undersigned agrees with the WVSCA that sufficient evidence to convict existed.

First degree robbery was defined for the jury as "when one person takes or attempts to take from the person of another, or in his presence against his will, any property, money, or other thing of value belonging to, or in the care, custody, control, management or possession of such person by committing violence to the person, including but not limited to, partial strangulation or suffocation, or any striking or beating, or using the threat of deadly force by the presenting of a firearm or other deadly weapon, with the intent to permanently deprive the victim of the property, money, or other thing of value." ECF No. 13-24 at 125. The Court then instructed the jury that before the defendants, Michael Kevin Lanham and Deborah Nunley, could be convicted

of robbery in the first degree, the State must prove to their satisfaction beyond a

reasonable doubt that:

      1)  the defendants, Michael Kevin Lanham and Deborah Nunley,

      2)  in Harrison County, West Virginia,

      3)  on or about the 18th day of February 2011,

      4)  did take

      5)  from Pamela L. Hollington

      6)  against her will

      7)  by committing violence to Pamela L. Hollington

      8)  United States currency

      9)  In the care and custody of Pamela L. Hollington

      10) With intent to permanently deprive Dry Cleaning World thereof.

ECF No. 13-24 at 125.

In addition, conspiracy to commit robbery in the first degree was defined as

"when any person enters into an agreement with another person or persons for the

purpose of committing the offense of robbery in the first degree against the State and

one member of that conspiracy subsequent to the agreement committed an overt act to

effectuate the object of the conspiracy which conspiracy has not terminated." Id. at 127.

The jury was then again given the definition of first degree robbery. The Court then

instructed the jury that before the defendants could be convicted of conspiracy to

commit robbery in the first degree, the State must prove to their satisfaction beyond a

reasonable doubt that:

      1)  the defendants,  Michael Kevin Lanham and Deborah Nunley,

2)  in Harrison County, West Virginia,

3)  on or about the 18th day of February, 2011,

4)  intentionally entered into an agreement and conspired with each other,

5)  for the purpose of committing robbery in the first degree of Dry Cleaning World,

6)  and that Michael Kevin Lanham and Deborah Nunley,

7)  subsequent to the agreement

8)  committed an overt act in furtherance of the conspiracy, which conspiracy had not terminated.

ECF No. 13-24 at 127-28.

During the Petitioner's criminal trial, the jury heard the eyewitness testimony of Pamela Hollington, the store clerk on duty at the time the Petitioner and his girlfriend, Deborah Nunley, robbed Dry Cleaning World ECF No. 13-23 at 126-29.  Ms. Hollington testified that the Petitioner and Ms. Nunley entered the store and asked about the tanning bed packages, and that the Petitioner was "about 5'10. He had on gray hoodie with jeans, he had on sunglasses that were like smoky, not really sunglasses like just smoky colored glasses."  Id. at 130.  Ms. Hollington further testified that right after they came out of the tanning bed room, the Petitioner hit her in the chin with his fist and threw her into a clothes rack.  Id. at 135. Ms. Hollington continued her testimony by stating that the Petitioner then shoved her in between the clothes rack and a clothing carousel and told her to lay face down on the floor. Id. at 139. Ms. Hollington continued by stating that the Petitioner yelled that he knew where she lived, that he knew she had a daughter living with her, and that if she attempted to raise her head he would "blow

[her] brains out." Id.   Ms. Hollington further testified that the Petitioner kept telling her that she better tell them how to get into the computer to get the register opened. Id, at 139. She testified that she had to give them the code a couple of times before they finally got it open. Id. at 141. Ms. Hollington testified that at one point she turned her head around to speak to the Petitioner to tell him the access codes. Id. at 142. She then identified the Petitioner in open court as one of her assailants. Id. at 144.

In addition to Ms. Hollington's testimony, the State presented the testimony of: (1) Terry Hotsinpillar, who provided a glancing description of the Petitioner and corroborated Ms. Hollington's testimony [ECF No. 13-23 at 211-123]; (2) Officer Bart Sayers, the Bridgeport police officer who first responded to the crime scene [Id. at 218-21]; (3) Todd Morgan, the CEO of Dry Cleaning World, who testified that Ms. Nunley was a former employee of the company who left without notice, after which an audit showed that a "bunch of cash was missing,"[8] [Id. at 225]; (4) Joseph Helms, a friend of the Petitioner and Ms. Nunley, who stated that they arrived at his house after the time of the robbery, that the pair appeared to be "awful nervous," and that the Petitioner remarked that he "can't believe we got away with it" [Id. at 501-52]; (5) Bridgeport Police Sergeant Gary Weaver, who investigated the crime, documented the crime scene and spoke with Ms. Hollington [ECF No. 13-24 at 9-23]; and Bridgeport Police Detective

---

[8] Mr. Morgan's testimony was largely relevant based upon the Petitioner's and Ms. Nunley's frustration at the time of the robbery in being unable to access the newly computerized cash register system. Specifically, Ms. Nunley asked Ms. Hollington where the key was to open the register, and the Petitioner told Ms. Hollington that he "knew that we had a key, and [she'] better tell him where it is." ECF No. 13-23 at 139. However, after Ms. Nunley quit her employment at Dry Cleaning World, Mr. Morgan testified that they did away with a key system for the cash drawer and installed a drop safe which required a code unique to each employee. Id. at 222-240.

Matt Wilfong, who spoke with Ms. Hollington and created the photographic array she used to identify the Petitioner and Ms. Nunley as her assailants. Id. at 46-62.

On appeal, relying on Syl. Pt. 3, State v. Guthrie, 194 W.Va. 657, 461 S.E.2d 163 (1995),[9] the WVSCA concluded that "the jury was presented with sufficient evidence upon which the jury could have returned a guilty verdict, [P]etitioner's credibility arguments notwithstanding."[10] ECF No. 13-11 at 3. The sum of the testimony, summarized  above, viewed in the light most favorable to the prosecution was clearly sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Therefore, applying deference to both the jury's findings and the WVSCA's review of Petitioner's claims on appeal, the Petitioner is not entitled to relief on his second claim.

## V.   Recommendation

For the reasons set forth above, the undersigned recommends that the Respondent's Motions for Summary Judgment [ECF Nos. 14 & 64] be **GRANTED;** the Respondent's Motion to Dismiss Petitioner's Amended Petition [ECF No. 48] be **DENIED AS Moot**; the Petitioner's Motion for Leave to File Amendments[11] [ECF No. 56] be **GRANTED**; the Petitioner's Motion for New Trial and for Release from Custody [ECF No. 59] be **DENIED AS MOOT**; the Petitioner's Motion to Submit New Evidence[12] [ECF

---

[9] In Guthrie, the WVSCA adopted the federal standard of review both as to Jackson generally and as to the standard of review in circumstantial evidence cases. 461 S.E.2d at 667.

[10] The undersigned notes that defense counsel spent considerable time at trial in an effort to impeach the credibility of Ms.  Hollington. ECF No. 13-23 at 152-206.

[11] Although styled as a Motion to Submit New Evidence, this "pleading" is continuing arguments in support of his petition, and the exhibits attached are either already part of the record or, in the case of the cartoon [ECF No. 56-2 at 4, irrelevant.

[12] Although styled as Motion to Submit New Evidence, it is actually contains repetitive arguments regarding his claims for relief and further indicates that he does not wish to pursue the unexhausted claim.

No. 62] be **GRANTED**; and the Amended Petition [ECF No.43] be **DISMISSED WITH PREJUDICE**.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.   A copy of any objections should also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th  Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.  The Clerk is further directed to provide a copy of this Report and Recommendation to counsel of record via electronic means.

Upon entry of this Report and Recommendation, the Clerk of cCourt is further **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 16, 2018

*/s James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE