IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL K. LANHAM,

        Petitioner,

v.                //    CIVIL ACTION NO. 1:17CV20
                               (Judge Keeley)

JOHN T. MURPHY, Warden,

        Respondent.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 69]

Pending for review is the Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Amended Petition") filed by the pro se petitioner, Michael K. Lanham ("Lanham"). In 2011, Lanham was convicted of first-degree robbery and conspiracy to commit robbery in the Circuit Court of Harrison County, West Virginia ("Circuit Court"). In his Amended Petition, Lanham contends that the photographic array used to identify him was impermissibly suggestive, and that there was insufficient evidence to support his convictions.

For the reasons that follow, the Court **ADOPTS** the Report and Recommendation (Dkt. No. 69), **GRANTS** the respondent's motions for summary judgment (Dkt. Nos. 14, 64), **DENIES** the Amended Petition (Dkt. No. 43), and **DISMISSES** the case **WITH PREJUDICE.**

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION [DKT. NO. 69]**

### I. BACKGROUND[1]

In May 2011, a grand jury in Harrison County, West Virginia, returned a two-count indictment, charging Lanham with one count of first-degree robbery and one count of conspiracy to commit robbery (Dkt. No. 13-1). The robbery in question occurred on February 18, 2011, at Dry Cleaning World in Bridgeport, West Virginia. During the course of the investigation of the robbery, Detective Matthew Wilfong ("Wilfong") of the Bridgeport Police Department compiled two photographic arrays consisting of six males and six females, respectively. On February 23, 2011, he presented both photo arrays to Pamela Hollington ("Hollington"), the victim and sole employee in the store at the time of the robbery. From the arrays, Hollington identified Lanham and Deborah Nunley ("Nunley"), Lanham's girlfriend and a former store employee, as having committed the robbery.

### A.    Criminal Trial and Direct Appeal

Prior to trial, Lanham moved to suppress the photographic array (Dkt. No. 13-2), contending that the identification procedure was impermissibly suggestive because both his photograph and that

---

[1] Magistrate Judge Seibert's R&R, adopted and incorporated, contains a more detailed summary discussion of the facts (Dkt. No. 69 at 4-7).

MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [DKT. NO. 69]

of Nunley appeared in the third position in each photo array.[2] At

a pretrial hearing on October 20, 2011, Detective Wilfong testified

that he had not purposefully placed Lanham and Nunley's photographs

in the third position in their respective photographic arrays,

stating that the sequencing of their photos "just happened to fall

on that [third] number" (Dkt. No. 13-22 at 12). Detective Wilfong

further testified that all of the individuals included in the

respective arrays shared similar ages, facial features and

hairstyles, and that, when presented with the male array,

Hollington had identified Lanham almost immediately and without

hesitation. Id. at 5, 16-17.

Following Wilfong's testimony, Lanham's attorney moved to

suppress the photo array, arguing that the same-position sequencing

of Lanham and Nunley was impermissibly suggestive, and also that

some of the photos were "a little dark" or stretched and,

therefore, inaccurate. Id. at 21-22. The Circuit Court denied

Lanham's motion, noting in doing so that the individuals included

in the array all shared similar features. Id. at 23. The case

proceeded to trial on October 25, 2011.

---

[2] The photographic arrays at issue are both comprised of six
photos arranged in two horizontal lines with three photos in each
line. Lanham and Nunley are both pictured in the third position in
the first row in each of their respective arrays.

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION [DKT. NO. 69]

At trial, Hollington testified about the events of the robbery before identifying Lanham and Nunley as her assailants (Dkt. No. 13-22). On October 26, 2011, the jury convicted Lanham on both counts (Dkt. No. 13-5 at 5), and, on December 8, 2011, the Circuit Court sentenced him to an aggregate term of 31 to 35 years incarceration (Dkt. No. 13-6). Lanham timely appealed his convictions (Dkt. No. 13-8 at 9).

The Supreme Court of Appeals of West Virginia ("Supreme Court of Appeals") affirmed Lanham's convictions on February 11, 2013 (Dkt. No. 13-11). In particular, it concluded that the trial court had not erred in admitting the photographic array or the subsequent identifications of Lanham, and that the jury had been presented sufficient evidence upon which it could have returned a guilty verdict (Dkt. No. 13-11 at 3).

## B.   Post-Conviction Proceedings

### 1. State Habeas Corpus

After the Supreme Court of Appeals affirmed his conviction, Lanham filed a pro se petition for habeas corpus relief on February 6, 2014 (Dkt. No. 13-27). The Circuit Court appointed counsel, who filed an amended petition on Lanham's behalf, raising the following issues: 1) mental competency at the time of trial; 2) the suppression of helpful evidence; 3) the State's knowing use of

perjured testimony; 4) ineffective assistance of trial counsel; 5) challenges to the composition of the grand jury; 6)constitutional errors and evidentiary rulings; 7) inadequate jury instructions; 8) prejudicial statements by the prosecutor; 9) insufficient evidence; 10) a more severe sentence than expected; and 11) an excessive sentence (Dkt. No. 13-15).

By written order entered on May 11, 2016, and amended order entered on May 24, 2016, the Circuit Court denied habeas relief (Dkt. No. 13-17), concluding that the entirety of Lanham's claim, including his constitutional challenge to the court's admission of the photographic identification at trial, was without merit. Id. at 19-20.

Lanham filed a timely notice of appeal on May 31, 2016 (Dkt. No. 13-18). Subsequently, however, his counsel moved to dismiss the appeal based on the inability to raise any colorable claims not barred by res judicata (Dkt. No. 13-19). The Supreme Court of Appeals dismissed the appeal on March 2, 2017 (Dkt. No. 13-21).

**2.   § 2254 Petition**

While his appeal was pending, on February 10, 2017, Lanham filed his § 2254 Petition in this Court (Dkt. No. 1). In his sole ground for relief, Lanham claimed that the photographic array used to identify him was impermissibly suggestive. Pursuant to 28 U.S.C.

§ 636 and LR PL P 2, the Court referred the Petition to United States Magistrate Judge James E. Seibert for initial review. On March 27, 2017, the respondent answered Lanham's Petition and also moved for summary judgment (Dkt. No. 14). With the Court's leave, Lanham amended his Petition on July 13, 2017 ("Amended Petition") (Dkt. No. 43).

In his Amended Petition, Lanham raised three grounds for relief. First, as he had throughout the course of his state and federal proceedings, he contended that the photo array used to identify him was unconstitutionally suggestive. Id. at 6. Second, he claimed there was insufficient evidence to support his conviction. Id. at 10. More specifically, he alleged that there was "no evidence to tie [him] to the crime or crime scene other than the tainted photo lineup." Id. Finally, he alleged that he was denied his Sixth Amendment right to confront the witnesses against him. Id. at 12.

On August 23, 2017, the respondent moved to dismiss the Amended Petition on the ground that, because Lanham had never presented his Sixth Amendment claim to any state court, his Amended Petition included an unexhausted claim and thus constituted a "mixed petition" subject to dismissal (Dkt. No. 49). On September 4, 2017, Lanham filed a motion seeking to abandon his unexhausted

claim (Dkt. No. 56), and reiterated his request in a subsequent filing on October 5, 2017 (Dkt. No. 58).

By Order entered on November 21, 2017, the magistrate judge directed Lanham to indicate whether he wished to seek a stay and return to state court to exhaust his state remedies regarding his Sixth Amendment claim (Dkt. No. 60). On December 8, 2017, Lanham moved to submit new evidence, stating that he did not wish to seek a stay (Dkt. No. 62). On December 12, 2017, the respondent renewed its motion for summary judgment (Dkt. No. 64).

In a Report and Recommendation ("R&R") entered on January 16, 2018, Magistrate Judge Seibert recommended that the Court grant the respondent's motions for summary judgment and deny and dismiss the Amended Petition with prejudice (Dkt. No. 69). With regard to the photographic array, the R&R concluded that Lanham had failed to adequately rebut the findings of the Circuit Court or the Supreme Court of Appeals, or to establish that the state courts that had reviewed his case had unreasonably applied federal law or improperly weighed the applicable facts in light of the evidence. Id. at 17. Magistrate Judge Seibert further concluded that, when viewed in the light most favorable to the prosecution, the evidence was sufficient to support the jury's verdict. Id. at 22.

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION [DKT. NO. 69]

The R&R informed Lanham of his right to file "written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections." Id. at 23. It further warned that the failure to do so may result in waiver of his right to appeal. Id. After receiving an extension of time to do so (Dkt. No. 78), Lanham timely filed objections to the R&R on February 5, 2018 (Dkt. Nos. 79; 81). On February 9, 2018, he moved to amend his objections to include certain attachments for the Court's consideration (Dkt. No. 81).

## II. STANDARDS OF REVIEW

### A.    Pro Se Pleadings

The Court must liberally construe pro se pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). A court may not, however, construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B.    Motion for Summary Judgment

Summary judgment is appropriate in a habeas corpus proceeding where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish

## MEMORANDUM OPINION AND ORDER ADOPTING
## REPORT AND RECOMMENDATION [DKT. NO. 69]

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); <u>see also</u> <u>Maynard v. Dixon</u>, 943 F.2d 407, 412 (4th Cir. 1991). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

**C.    Report and Recommendation**

When reviewing a magistrate judge's R&R, the Court must review <u>de novo</u> only those portions to which an objection is timely made. 28 U.S.C. § 636(b)(1)(C). On the other hand, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." <u>Dellacirprete v. Gutierrez</u>, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions of a recommendation to which no objection has been made unless they are "clearly erroneous." <u>See</u> <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005).

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION [DKT. NO. 69]

Vague objections to an R&R distract a district court from "focusing on disputed issues" and defeat the purpose of an initial screening by the magistrate judge. McPherson v. Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) (citing Howard's Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997)). Failure to raise specific errors waives the claimant's right to a de novo review because "general and conclusory" objections do not warrant such review. Id. (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); Howard's Yellow Cabs, 987 F. Supp. at 474); see also Green v. Rubenstein, 644 F. Supp. 2d 723 (S.D.W. Va. 2009). Indeed, failure to file specific objections waives appellate review of both factual and legal questions. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984); see also Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991).

### III. APPLICABLE LAW

Title 28 U.S.C. § 2254 permits a state prisoner to file an application for a writ of habeas corpus to challenge his conviction "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). A court

may not grant a writ under § 2254 regarding a claim "adjudicated on

the merits in State court" unless the adjudication:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of facts in light of the
> evidence presented in the State court proceeding.

Id. § 2254(d).

A "state-court decision is contrary to" the Supreme Court's

"precedent if the state court arrives at a conclusion opposite to

that reached" by the Supreme Court "on a matter of law" or

"confronts facts that are materially indistinguishable from a

relevant Supreme Court precedent and arrives at a result opposite

to ours." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state

court decision "involves an unreasonable application" of such law

if it "identifies the correct governing legal principle . . . but

unreasonably applies" it to the facts. Id. at 412. Importantly,

"unreasonable application" requires that the Court do more than

"conclude[] in its independent judgment that the relevant state

court decision applied clearly established federal law erroneously

or incorrectly." Id. at 411. Therefore, § 2254 acts to guard only

against "extreme malfunctions," such as "cases where there is no

possibility fair minded jurists could disagree that the state

11

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION [DKT. NO. 69]**

court's decision conflicts with" Supreme Court precedent.
Harrington v. Richter, 562 U.S. 86, 102 (2011).

Indeed, "principles of comity and respect for state court judgment precludes federal courts from granting habeas relief to state prisoners for constitutional errors committed in state court absent a showing that the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" Richmond v. Polk, 375 F.3d 309, 335 (4th Cir. 2004) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). Factual determinations by the state court are presumed correct, unless the petitioner proves otherwise by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Sharpe v. Bell, 593 F.3d 372, 379 (4th Cir. 2010).

## IV. DISCUSSION

For the most part, Lanham's objections fail to identify specific errors in the R&R and, in fact, contain few references to the R&R itself. These reiterations and general objections, all of which were fully addressed in the R&R, place the Court under no obligation to conduct a de novo review. Diamond, 414 F.3d at 315.

When liberally construed, Lanham's objections to specific portions of the R&R ostensibly concern his claim regarding the sufficiency of the evidence at trial. Additionally, he seeks a stay so that he can return to state court to exhaust his Sixth Amendment

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION [DKT. NO. 69]**

claim. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 340
(S.D.N.Y. 2009)(noting that pro se objections should be "accorded
leniency" and "construed to raise the strongest arguments that they
suggest" (internal quotation omitted)). Accordingly, this Court
will review de novo only those portions of the magistrate judge's
findings. The remaining portions will be reviewed for clear error.

**A.    Sufficiency of the Evidence**

When liberally construed, Lanham's objections appear to
reference the R&R's evaluation of the trial testimony "at the
bottom of pg. 21" and 22 of the R&R (Dkt. No. 79 at 2; 3; 5; 6).
Upon careful review of the record and the R&R, the Court concludes
that Lanham's objections are without merit.

An essential element of the "due process guaranteed by the
Fourteenth Amendment [is] that no person shall be made to suffer
the onus of a criminal conviction except upon sufficient proof."
Jackson v. Virginia, 443 U.S. 307, 316 (1979). Before passage of
the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the
Supreme Court asked "whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt." Id. at 319. "This familiar standard gives full
play to the responsibility of the trier of fact fairly to resolve

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION [DKT. NO. 69]**

conflicts in testimony, to weigh the evidence, and to draw reasonable inference from basic facts to ultimate facts." Id. Under 28 U.S.C. § 2254(d)(1), courts similarly ask "whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively unreasonable application of [the standard enunciated in] Jackson.'" Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (alteration in original) (quoting Sarausad v. Porter, 479 F.3d 671, 677 (9th Cir. 2007)).

Evidence is sufficient to support a conviction in the Fourth Circuit if "there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." United States v. Palacios, 677 F.3d 234, 248 (4th Cir. 2012) (quoting United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. (alteration in original) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

Here, the evidence was sufficient for the jury to have found the essential elements of first-degree robbery and conspiracy to commit robbery beyond a reasonable doubt. At trial, Hollington testified at length about the robbery, describing in detail the

sequence of events from Lanham and Nunley's arrival at Dry Cleaning World to their departure from the store with $230 stolen from the cash register (Dkt. No. 13-23). According to Hollington, Lanham and Nunley entered Dry Cleaning World on February 18, 2011, and inquired about the store's tanning bed packages. <u>Id.</u> at 130. Hollington testified that, after Lanham came out of the tanning room, he hit her in the chin with his fist, threw her into a clothing rack, and told her to lie face down on the floor. <u>Id.</u> at 135; 139. Hollington further testified that Lanham told her that he knew where she lived, that he knew she had a daughter, and that, if she attempted to raise her head, he would "blow [her] brains out." <u>Id.</u> at 139.

Hollington also testified that Lanham repeatedly told her she had better tell him and Nunley how to get the cash register open, and that she had to give them the access code more than once before they were able to open the register. <u>Id.</u> at 139; 141. Notably, Hollington recounted how, at one point, she turned her head around to speak to Lanham about the access code, and thus, was able to observe his physical appearance at the time of the robbery. <u>Id.</u> at 142. In her testimony, she described him as "about 5'10," and wearing a "grey hoodie with jeans" and "smoky colored glasses." <u>Id.</u>

**MEMORANDUM OPINION AND ORDER ADOPTING**
**REPORT AND RECOMMENDATION [DKT. NO. 69]**

at 130. Finally, Hollington identified Lanham in open court. <u>Id.</u> at 144.

In addition to Hollington's testimony, the State presented the testimony of at least six other witnesses, including that of Terry Hotsinpillar, who also provided a physical description of Lanham and generally corroborated Hollington's testimony, and that of Joseph Helms, who testified that, when Lanham and Nunley arrived at his house after the robbery, Lanham remarked that he "can't believe we got away with it." <u>Id.</u> at 211-16; 249-50.

On appeal, the Supreme Court of Appeals concluded that "the jury was presented with sufficient evidence upon which [it] could have returned a guilty verdict, [Lanham's] credibility arguments not withstanding" (Dkt. No. 13-11 at 3). Further, the Court must presume that the jury "resolved any . . . conflicts in favor of the prosecution, and must defer to that resolution." <u>Williams</u>, 494 F.3d at 490 (quoting <u>Jackson</u>, 443 U.S. at 326). Thus, when viewing the evidence and all credibility assessments in favor of the prosecution, the Court concludes that the sum of the testimony at trial, as recounted here and in the R&R, constituted adequate evidence upon which the jury could have based its conclusion that Lanham was guilty beyond a reasonable doubt. The Court therefore **OVERRULES** Lanham's objections.

MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [DKT. NO. 69]

**B.    Request for Stay**

As part of his objections, Lanham requests a stay in the case so that he can exhaust his state remedies regarding his Sixth Amendment claim (Dkt. No. 79 at 1, 5, 8).

Importantly, district courts may only entertain a writ pursuant to § 2254 if the applicant has exhausted all available state remedies. Id. § 2254(b)(1)(A). Prisoners have not exhausted their state remedies if they have "the right under the law of the State to raise, by any available procedure, the question presented." Id. § 2254(c). It is the prisoner's burden to demonstrate that he has exhausted his state judicial remedies. Beard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). The exhaustion rule in § 2254(b), (c) requires district courts to dismiss so-called "mixed petitions" containing any unexhausted claims. Rose v. Lundy, 455 U.S. 509, 520-22 (1982). Prisoners may then resubmit petitions with only exhausted claims, or exhaust the remainder of their claims before filing another petition. Id. at 520.

Under the AEDPA, prisoners must file suit within one year of the judgment of the state court. 28 U.S.C. § 2255(d)(1). That time period begins to run from the date when the state judgment became final "by the conclusion of direct review or the expiration of the time for seeking such review," see id., but is tolled for the

pendency of any state post-conviction proceedings. Id. §
2244(d)(2). Importantly, a prisoner cannot toll the one-year
limitation period under the AEDPA by filing a federal habeas
petition. Duncan v. Walker, 533 U.S. 167, 172 (2001).

    To remedy the potentially harsh consequences that arise when
prisoners file mixed § 2254 petitions near the one-year deadline,
district courts have discretion to grant a stay and abeyance.
Rhines v. Weber, 544 U.S. at 269, 277 (2005). This allows prisoners
to pursue any unexhausted claims in state court and return to the
district court to prosecute their § 2254 petitions. See id. The
Supreme Court of the United States has cautioned, however, that
stays are to be granted "in limited circumstances," so as not to
frustrate the AEDPA's objectives of achieving finality and
streamlining federal habeas proceedings. Id. The prisoner must show
"good cause" for his failure to exhaust his claims in state court;
furthermore, his claims must not be "plainly meritless." Id. The
district court must structure any stay to comport with the
timeliness concerns reflected in AEDPA. Id. Finally, the district
court must not grant a prisoner a stay if he engages in "abusive
litigation tactics or intentional delay." Id. at 278.

    In the event that a court decides a stay and abeyance is
inappropriate, it must allow the prisoner to "delete the

unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." Id.

Here, Lanham's Amended Petition includes a claim that he was denied his Sixth Amendment right to confront the witnesses against him (Dkt. No. 43 at 12). While it is undisputed that this claim has not been exhausted, on at least two occasions subsequent to the filing of the Amended Petition, Lanham has clearly indicated to this Court that he wished to abandon his unexhausted Sixth Amendment claim (Dkt. Nos. 56, 58). In the face of these clear indications of his desire to drop his Sixth Amendment claim from the Amended Petition, the magistrate judge provided Lanham with the opportunity to seek a stay in the case, and directed him to specifically indicate whether he wished to return to state court to exhaust his state remedies regarding his Sixth Amendment claim (Dkt. No. 60). In a subsequent filing responding to that inquiry, Lanham unequivocally stated that he did not wish to seek a stay in the case (Dkt. No. 62).

Now, following the issuance of Magistrate Judge Seibert's R&R recommending that his Petition be dismissed with prejudice, Lanham, for the first time, seeks a stay for the purpose of exhausting his Sixth Amendment claim. As discussed above, Lanham had the

### MEMORANDUM OPINION AND ORDER ADOPTING
### REPORT AND RECOMMENDATION [DKT. NO. 69]

opportunity to seek a stay in order to exhaust his state remedies regarding his unexhausted claim but instead chose to delete the unexhausted Sixth Amendment claim from his Amended Petition and proceed on his exhausted claims. Furthermore, in his request for a stay, Lanham has failed to establish any good cause for his failure to exhaust his Sixth Amendment claim in state court. <u>Rhines</u>, 544 U.S. at 277.

For these reasons, particularly the procedural posture of the case and Lanham's repeated, consistent statements regarding his decision to abandon his unexhausted claim, the Court declines to grant Lanham's request for a stay and abeyance.

### V. CONCLUSION

Following a <u>de novo</u> review of Lanham's specific objections, and finding no clear error in those portions of the R&R not specifically objected to, the Court:

1). **ADOPTS** the R&R in its entirety (Dkt. No. 69);

2). **OVERRULES** Lanham's objections (Dkt. Nos. 79; 81);

3). **GRANTS** the respondent's motions for summary judgment (Dkt. No. 14; 64);

4). **DENIES as MOOT** the respondent's motion to dismiss the petitioner's amended petition (Dkt. No. 48);

**MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [DKT. NO. 69]**

**5).** **GRANTS** the petitioner's motion for leave to file amendments (Dkt. No. 56);

**6).** **DENIES as MOOT** the petitioner's motion for new trial and for release from custody (Dkt. No. 59);

**7).** **GRANTS** the petitioner's motion to submit new evidence (Dkt. No. 62);

**8).** **DENIES** the petitioner's motion to file an affidavit (Dkt. No. 70)[3];

**9).** **GRANTS** the petitioner's motion to amend his objections to the R&R (Dkt. No. 81); and

**10).** **DENIES** the Amended Petition (Dkt. No. 43) and **DISMISSES** this case **WITH PREJUDICE.**

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a

---

[3] "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011).

MEMORANDUM OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION [DKT. NO. 69]

certificate from the court of appeals under Federal Rule of
Appellate Procedure 22." 28 U.S.C. foll. § 2254(a).

The Court finds that it is inappropriate to issue a
certificate of appealability in this matter because Lanham has not
made a "substantial showing of the denial of a constitutional
right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this
standard by demonstrating that reasonable jurists would find that
any assessment of the constitutional claims by the district court
is debatable or wrong and that any dispositive procedural ruling by
the district court is likewise debatable. See Miller-El v.
Cockrell, 537 U.S. 322, 336–38 (2003). Upon review of the record,
the Court finds that Lanham has not made the requisite showing, and
**DENIES** a certificate of appealability.

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order
to counsel of record and to the pro se petitioner, certified mail,
return receipt requested. The Clerk is further **DIRECTED** to enter a
separate judgment order and to remove this case from the Court's
active docket.

DATED: March 28, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE